the materials which they had furnished, entered into a written agreement with Smith to give him time until the 1st of November, 1837, upon his giving security by a deed of trust upon all his real estate in the city of Washington. On the 29th of October, 1835, the complainant and Shepherd and Mudd executed the following writing: "Whereas the creditors of Nathan Smith have generally united in an agreement to extend the time of their demands, upon his executing a certain deed of trust, particularly mentioned in the said agreement; and whereas we, the undersigned creditors, have liens upon part of the property of the said Nathan Smith, and are, therefore, not upon the same footing with the other creditors, but are desirous to make the same extension of credit that they have: Now we do agree to forbear any coercion of our several demands upon him for the term of two years from the first day of November next, provided that the said Nathan Smith shall and do first execute his deed of trust according to the terms of the agreement hereinbefore referred to; and provided also, that his other creditors shall agree to the like extension, so that we shall not lose any priority of lien, whether under the lien law, or otherwise, which we now may have." On the 31st of October, 1835, Smith executed the deed of trust to the defendants Dyer and Blagden, reciting the names of his creditors, and the amount due to each, and among the rest, "to Abraham B. Waller, in the sum of .$651.54. And whereas also the said Shepherd and Mudd and Abraham B. Waller have executed and delivered to the said Nathan Smith, an instrument of writing, dated on the 29th day of October, 1835, making the same extension of credit given in the first-named instrument of writing, dated on the 20th day of October, 1835, and on the same conditions, but reserving any priority of lien, whether under the act of congress aforesaid. or otherwise, which they, the said Shepherd and Mudd and Abraham B. Waller, might have on the said 29th day of October, 1835, and whereas also." &c. "Provided, however, that nothing herein contained shall be construed to impair the legal priorities of lien hereinbefore mentioned as belonging to the Patriotic Bank, and to Shepherd and Mudd, or which belongs to Abraham B. Waller."

The act of congress of the 2d of March, 1833 (4 Stat. 659), entitled "An act to secure to mechanics and others, payment for labor done, and materials furnished in the erection of buildings in the District of Columbia," after giving a lien, &c., provides: "That no such debt for work and materials, shall remain a lien on the said house or other buildings, longer than two years from the commencement of the building thereof, unless an action for the recovery of the same be instituted, or the claim filed, within three months after performing the work, or furnishing the materials, in the office of the clerk of the court for the county in which the building shall be situated."

It was agreed by the counsel for the parties respectively, that if the court should be of opinion that the complainant had such a lien on the 29th of October, 1835, then a decree should be rendered against the trustees for the amount of the note. If otherwise, then the decree should be for an equal dividend with the other creditors.

Mr. Bradley, for plaintiff.
R. J. Brent and Mr. Hellen, for defendants.

THE COURT was of opinion that the complainant had no lien on the 29th of October, 1835, as the two years expired on the 25th.

---

## Case No. 17,109.
### WALLER v. STEWART.
[4 Cranch, C. C. 532.] [1]
Circuit Court, District of Columbia. March Term, 1835.

PRACTICE—INSPECTION OF BOOKS—COMPETENCY OF WITNESS.

1. It is not too late, after the jury is sworn, to call for the books which the court has ordered to be produced at the trial. If the party calling for the books inspect them, he makes them evidence for the other party.
[Cited in Edison Electric Light Co. v. United States Electric Lighting Co., 45 Fed. 59.]

2. If the witness is protected from liability by the act of limitations, he is a competent witness without a release from the party to whom he was liable.

Assumpsit for $116.30, for lumber sold and delivered. The defendant [Stewart's executrix] had obtained an order of the court upon the plaintiff, to produce, upon the trial, his original book of entries. After the jury was sworn the defendant called for the book. The plaintiff's counsel, Mr. Bradley, refused to produce it, although he had it ready, saying that the call was too late after the jury was sworn, and cited Geyger v. Geyger, 2 Dall. [2 U. S. 332] 332.

Mr. Morfit, contra, cited the judiciary act of 1789, § 15 (1 Stat. 73); Blight v. Ashley [Case No. 1,541]; and Kenney v. Vanhorne, 1 Johns. 394.

THE COURT (nem. con.) was of opinion that the motion for non pros. for not producing the book, was not too late. The book was then produced.

Mr. Bradley then gave notice to the defendant's counsel that if they inspected the books he should claim the right to use them as evidence for the plaintiff, and cited Jordan v. Wilkins [Case No. 7,526].

THE COURT (CRANCH, Chief Judge, and MORSELL, Circuit Judge, hesitating, and thinking there were contrary decisions on the point) decided that if the defendant's counsel inspected the book he made it evidence for the plaintiff.

Mr. Morfit then refused to inspect it.

Mr. Peter Kurtz was then offered as a witness for the plaintiff, and was about to testify

1 [Reported by Hon. William Cranch, Chief Judge.]

that he was employed by Stewart, and got the lumber on his credit.

Mr. Brent, for defendant, objected that the witness was interested; but, it appearing that he was protected by the statute of limitations, he was permitted to testify without a release from the plaintiff.

NOTE. Upon the question whether the calling for and inspecting the books of the opposite party authorizes him to read them in evidence, if the party calling for them refuse to use them, see the following cases in this court: Banks v. Miller [Case No. 963] June, 1809; Lindsay v. Riggs [Id. 8,366] Dec., 1811; Clementson v. Williams [Id. 2,885] June, 1812; and Coote v. Bank of U. S. [Id. 3,203] Dec., 1826.

WALLER (UNITED STATES v.). See Case No. 16,634.

## Case No. 17,110.

### WALLIS v. CHESNEY.

[4 Am. Law Reg. 307.]

District Court, D. Maryland. 1856.

ADMIRALTY JURISDICTION—AFFREIGHTMENT—CARRIAGE BY CANAL.

1. The admiralty has not jurisdiction of a libel for freight on merchandise carried in a canal-boat, about two hundred and fifty miles by canal, and only about forty miles on tide-water.

[Cited in American Transp. Co. v. Moore, 5 Mich. 390.]

2. To give jurisdiction on a contract of affreightment, the principal or chief part of the service must be under the contract to be performed on tide-water.

Libel for freight on coal. Plea to the jurisdiction of the court.

GILES, District Judge. The facts of this case are as follows: The coal was brought in a canal-boat from Pittston, Luzerne county, Pennsylvania, on the canal to Port Deposit; and from that point the canal-boat was towed by a steamboat to Baltimore. It was brought on the canal about two hundred and fifty miles, and on tide-water about forty miles. Is the contract to carry this coal a maritime contract, over which this court has jurisdiction? I think not. The contract is entire, and four-fifths of the distance this coal was carried was on a canal, clearly beyond the jurisdiction of this court. Now, the supreme court, in the case of The Lexington, on page 392 of 6 How. [47 U. S.] say, "But if the substantial part of the service under the contract is to be performed beyond tide-waters, or if the contract relates exclusively to the interior navigation and trade of a state, jurisdiction is disclaimed." I understand the court to mean, by the word "substantial," the principal or chief part of the service. I will briefly notice the cases in this court, to which I have been referred by the proctor for the libellant. In the case of The Telegraph [Case No. 13,821], which was a collision which took place on the Chesapeake and Delaware Canal, the circuit court reversed the decree of the district court, for the want of jurisdiction. The case of Ware v. Baltimore Steam-Towing Co. [unreported], in which a decree was given for libellants, was a case for freight on goods brought from Philadelphia to Baltimore. The goods were carried down the Delaware to the Chesapeake and Delaware Canal, and through that canal, and on the Chesapeake Bay and Patapsco river, to Baltimore; more than three-fourths of the distance was on tide-water, and the goods were carried on a vessel built and used for transportation on tide-water. The Case of York River Steamboat Co. [Case No. 18,144] grew out of a collision which took place on the Chesapeake Bay, near the mouth of the Patapsco river. The steamer ran against and injured a canal-boat at that point. Now, in cases of tort, the locality determines the jurisdiction; and as the collision happened on tide-waters, this court clearly had jurisdiction of the case. I will sign a decree. dismissing the libel filed in this case, for want of jurisdiction.

## Case No. 17,111.

### WALLIS v. THORNTON.

[2 Brock. 422.] [1]

Circuit Court, D. Virginia. May Term, 1831.

JUDICIAL SALES—SALE BY MARSHAL ON CREDIT—TAKING BONDS—RIGHTS OF CREDITOR—TRUSTS—EQUITY SUPERVISION.

1. Where a decree directs an officer of the court to sell property, "and bring the proceeds of sale into court," and the sale is on a credit of one, two, and three years, and bonds are given for the payment of the instalments, these bonds are the immediate proceeds of sale. As a matter of convenience, they may be permitted to remain in the hands of the officer, but as matter of strict right, the creditor may require that they shall be brought into court.

2. Where bonds are made payable to the marshal of a court, he has a right to collect them. In such case, the marshal must be considered as a trustee for the creditor. Quære, whether the direction to take bond implies, that it shall be taken to the marshal, rather than to the creditor? Where bonds are taken, not to the marshal and his successors, but to J. P., marshal, &c., his executors. administrators, and assigns, could his successor, in the event of the marshal being changed before the money is paid, act on these bonds without an assignment?

3. If bonds are made payable on or before the day mentioned in the condition, but the decree under which the sale is conducted, does not authorize the insertion of these words, it seems that the trustees have no right to receive the money before the day: if they had, the cestui que trust might be injured, without having an opportunity of providing for his safety. But, admitting that the trustees have a right to receive the money before it is due. they have no right to discount legal interest and receive only a part of the debt.

4. Courts of equity extend their control, not only over the acts of trustees, but over the acts of those who have any agency in enabling the trustees to violate their trust.

[Cited in brief in Keyser v. Hitz, 2 Mackey, 517.]

[1] [Reported by John Brockenbrough, Esq.]